### RAY *vs.* BURBANK & JONES.

1. Where a druggist, in good faith, recommends a perscription, not as his own, but as that of another named person, and thereupon is ordered by his customer to fill it, and does so, charging only for the medicines and for compounding them, he is not responsible to the customer for any damage which may result from the use or administration of the remedy by the latter. To *fill* a prescription is to furnish, prepare and combine the requisite materials in due proportion as prescribed. A recipe or formula for the treatment of a given disease in horses may be called a prescription, whether it proceeds from a professional source or only from a common person.

2. There was evidence to uphold the verdict.

Torts. Druggist. New Trial. Before Judge UNDERWOOD. Polk Superior Court. February Term, 1878.

Burbank & Jones, druggists, compounded for Ray a prescription for the "scratches," with which his horse was affected. They stated to him that it was a prescription prepared by one Mann, which he had used with success, and they recommended it to him. These assertions as to its preparation by Mann and use by him were true. He paid them thirty-five cents for it, applied it to his horse, the horse was damaged, he consequently lost valuable time, etc., wherefore he brought suit for $500.00 damages. The jury

found for the defendants.   He moved for a new trial upon the following grounds :

1. Because the verdict was contrary to law and evidence.

2. Because the court erred in charging, that if a druggist fills a prescription and damage results from it, he is not liable, there being no evidence to authorize such charge.

The motion was overruled, and the plaintiff excepted. ·

IVY F. THOMPSON ; J. R. BARBER ; ALEXANDER & WRIGHT, for plaintiff in error.

BLANCE & KING, by E. N. BROYLES, for defendants.

BLECKLEY, Justice.

The following evidence, as abstracted for this court by the plaintiff in error, was introduced on the trial below :

L. G. Ray, the plaintiff, stated that his horse had the scratches in September, 1875, and that he went to the defendants' drug-store in Cedartown, Ga., and called for some white lead and oil, and was told by Mr. Burbank, one of the defendants, that he did not have it.   Witness turned and started out of the store ; when he reached the door, Burbank called witness back, and said :   "I have a prescription which is a sure cure for the scratches, furnished me by Joe Mann, and has been used by said Mann, Pool and others with success," and upon this witness ordered the said Burbank to prepare the said prescription for witness ; he then proceeded to compound a prescription, the ingredients of which were unknown to witness, and after the said compound was prepared said Burbank gave the same to witness, and for which he paid the said defendants thirty-five cents ; that the only persons present in said drug-store at the time of the above conversation between defendant, Burbank, and witness, were said Burbank, Henry C. King and witness ; that after, the delivery of the compound so prepared by defendant, Burbank, to witness, he, witness, went imme-

diately home and applied the same to his horse's feet in the manner and way directed by the said Burbank, viz : with a mop made with a woolen cloth; on the application of said compound the same caused the place where applied on his horse's feet to smoke, and the horse to raise his feet and grunt; that witness, on the following day, made another applica- tion of said compound to his horse's feet with the same effect on the horse apparently, if anything, worse. It ap- peared from his action to give him more pain than did the first application, and on the third or fourth day after witness obtained the said compound from defendant, Burbank, he made the third and last application while he was at the house of Dutch Greene, which was some two miles from witness' home in Cedartown. On this occasion, before wit- ness applied the compound, the horse's feet were in a worse condition than they had been before; that is, they were very much swollen, and were black as if burnt or charred ; the same day witness brought the said horse home, and it was with great difficulty that he could travel with him ; witness had to lead him a part of the way, and after witness reached home, which was after night, he saw that said com- pound was having too severe an effect on said horse, where- upon he procured some linseed oil and applied the same to the parts of the horse to which the compound prepared by Burbank was applied. The morning after the appli- cation of the oil the flesh and skin sloughed off the back sides of all the legs of said horse from the ankle joints to the hoof, but a great deal worse on the hind feet, leaving exposed to view the bones and sinews of the feet and legs; that the horse, in consequence of the same, could not be forced to walk across the lot, or even out of the stable ; wit- ness made no other application to said horse's feet except oil; some four or five days after this witness turned said horse over to A. Dougherty for treatment, in whose care and treatment the said horse remained a month or six weeks, at the end of which time the said horse was wholly unfit for

:any kind of use, and almost unable to walk at all; the said horse was then delivered to James Briges for treatment, who kept him some three months, when he was returned to witness with some improvement in his feet and legs, but still unfit for use, three of them partially healed over, the other in a running sore and swollen about three times its natural size; the said horse was not used any until the summer of 1877, when he was plowed a little, and driven by plaintiff a few short trips to his sewing machine wagon. The horse has never recovered, his legs still being stiff, and one very much swollen and having a running sore on it. Plaintiff was engaged in selling sewing machines for the Singer company; the horse was the property of the plaintiff and never that of the company, and was worth, before the application of said compound so prepared by defendant, Burbank, the sum of three hundred dollars; he was an excellent saddle and harness horse, being about six years old at that time and of medium size and very tough; is now worth about thirty dollars for farm use, but worth nothing for plaintiff's use. The plaintiff paid A· Dougherty eighteen dollars for said horse's treatment for the time he had charge of him, and paid Harris and Briges fifteen dollars for attention and pasturage; the plaintiff furnished the feed during the time, and, in consequence of the condition of said horse, plaintiff had to hire and feed another horse, besides feeding his injured horse, which cost about thirty dollars per month, and paid out for medicines and oils about fifteen dollars; plaintiff traded off said horse some time in January, 1878, for a blind pony worth about twenty dollars, and gave thirteen dollars in trade to boot. At the time Burbank prepared said compound, he told plaintiff to be careful and not let the composition get on his, plaintiff's, hands.

J. D. Enlow, sworn for plaintiff, stated that he knew said horse before the application of the compound by plaintiff for some time, and that he was worth one hundred and fifty

dollars; that he saw said horse at his stable where plaintiff kept him, and at Dougherty's stable after he was removed there, and that the hind feet especially, were very much swollen and sloughed off, leaving the bones and sinews exposed.

A. Dougherty, sworn for plaintiff, stated that he knew said horse before the injury; that he treated said horse for the plaintiff, and that he was in a very bad condition when brought to his stable by plaintiff; that he corroborated plaintiff as to the condition of said horse about the sloughing off of the flesh and skin of his feet; that he had kept livery stable for several years, and had considerable experience in treating horses for scratches and other diseases; that said horse was in the worst condition that he had ever seen one with the scratches; that in his treatment he never used anything on said horse but oil, and that oil or grease of any kind had a beneficial effect on scratches; that the hire of a horse such as plaintiff's before he was injured, was worth fifteen dollars per month, and the board of a horse was worth fifteen dollars per month, and that the last time he saw said horse, just before this court, he had not recovered and was almost worthless.

T. G. W. McMeekin, sworn for plaintiff, stated that in the fall of 1876, he saw the plaintiff leading the horse to water; the horse's legs were very much swollen, and in a bad condition; did not think the horse worth anything at that time.

G. C. Green, sworn for plaintiff, stated that he saw the plaintiff make an application of medicine to his horse's feet at his, witness', house, and that when the medicine was applied it caused the smoke to rise, and had the appearance of being very severe, causing the horse to kick and jump around; witness advised plaintiff to quit the use of said medicire as it would ruin his horse, and when plaintiff left his house the horse could scarcely travel.

Henry C. King, sworn for plaintiff, stated that he was in defendant's drug store, in Cedartown, when a preparation

for scratches was compounded by defendant, Burbank, and delivered to plaintiff, and heard said Burbank tell plaintiff that John T. Mann said it was a good remedy for scratches, and that he, Mann, said that several persons had used it successfully. When the medicine was mixed it boiled up and smoked; witness remarked to Burbank that it seemed to be very hot.

T. F. Burbank, sworn for defendants, stated that he compounded said medicine for plaintiff by a prescription which had been previously furnished him by Joseph Mann, and that he had compounded the same for Mann, Dick Pool and Hunington, that it had a good effect, and that the same was compounded of the following ingredients and proportions, to-wit: One ounce white lead, one ounce verdigris, three and a half ounces sulphuric acid; that the plaintiff was still owing them for some oils, etc., that Dougherty got while he was treating said horse, and that he furnished Hunington, Pool, Briges and Mann the same prescription as that furnished Ray, both in quantity and quality, and that he told plaintiff that said Mann said it was good for scratches.

Joseph Mann, sworn by interrogatories for defendants, to which was attached a prescription sent by Joseph Mann to defendants, which was as follows, to-wit: "Mr. Burbank: Please send me one ounce white lead, one ounce verdigris, three and a half ounces sulphuric acid, and oblige, R. J. Mann. Dec. 30, '73. You may mix them all together." Wrote the prescription attached, got the drugs in prescription, used them on a mule with the effect of a cure. I gave said prescription to said Burbank, and used the receipt upon one mule, and never used it or any other; the receipt is both good and harmless if properly used, in that it is an effectual cure for scratches, and would use the receipt again if occasion required it; know nothing more that will benefit the defendants.

*Cross*—Was not present and did not see defendant or either of them compound for plaintiff a prescription for

scratches on horse; of his own knowledge, does not know of what medicines said prescription was compounded.

R. T: Pool, sworn for defendants, stated that he got a compound from said defendants filled by "the Joseph Mann prescription" for scratches, and used it on seven mules with good effect.

James Briges, sworn for defendants, stated that he treated the said horse for plaintiff for some time; that said horse was in a bad fix; that he benefited said horse by his treatment, which consisted in washing the affected parts with Castile soap and greasing the same; that he had some experience in treating horses for scratches and other diseases, that he had used "the Joseph Mann receipt" or prescription with good effect, that he got it from Graves Logan a long time ago, and that he had obtained and used the same from Burbank.

A. Hunington, sworn for defendants, stated he used a preparation compounded by the said Burbank, made by that furnished him by Joseph Mann for scratches, and it cured his horse.

Dr. J. L. Branch, sworn for defendants, stated that he was a practicing physician; that sulphuric acid applied to the flesh would destroy the body or texture of the flesh, but when compounded with white lead and verdigris in the proper proportions, would only slightly char or burn the flesh, and would be a good remedy for scratches; thinks that the prescription attached to Joseph Mann's interrogatories designates the proper proportion of which said compound ought to be made to be used for scratches; if in making up this prescription an over proportion of sulphuric acid should be put in the compound, it would have the effect to eat out or destroy the flesh.

Dr. W. G. England, sworn for defendants, corroborated Dr. Branch in his testimony.

1. There seems to be no reason to question the good faith of the druggist. To fill a prescription is to furnish, prepare

and combine the requisite materials in due proportion as prescribed. It is urged that prescriptions refer to medical provision for human beings, and do not appertain to the medication of animals; or, at least, that they can proceed only from professional sources, and are not prescriptions if they emanate from common persons. Why a recipe or formula for the treatment of horses, may not be called a prescription, we do not see, from whatever source it may proceed. Life and health are physical, and are common to man and brute; and a plain, unscientific person may prescribe with less skill than a physician or a veterinary surgeon, but, at times perhaps, with equal efficiency. At all events, the owner of a horse is entitled to choose his medicine, and if he chooses it on the mere recommendation of a druggist, and the druggist is guilty of no bad faith, the failure of the medicine is simply a misfortune. The evidence is not necessarily convincing that there was want of skill in the act of compounding, or any departure from the recipe either in selecting or combining the materials. All that can be certainly said is, that, in the given case, the remedy proved disastrous.

2. The evidence warranted the verdict. The matters of fact were for the jury.

Judgment affirmed.